16-140-cv
*Certified Multi-Media v. Preferred Contractors*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of January, two thousand seventeen.

PRESENT:    JOHN M. WALKER, JR.,
            DENNY CHIN,
            SUSAN L. CARNEY,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CERTIFIED MULTI-MEDIA SOLUTIONS, LTD.,
                    *Plaintiff-Appellee*,

ST. PAUL FIRE & MARINE INSURANCE
COMPANY, TRAVELERS,
                    *Intervenor-Plaintiff-Appellee,*

            v.                                          16-140-cv

PREFERRED CONTRACTORS INSURANCE
COMPANY RISK RETENTION GROUP, LLC,
                    *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLEE: ANITA NISSAN YEHUDA, Anita Nissan Yehuda, P.C., Roslyn Heights, New York.

FOR INTERVENOR-PLAINTIFF-APPELLEE: THOMAS A. MARTIN (James M. Strauss, *on the brief)*, Putney Twombly Hall & Hirson LLP, New York, New York.

FOR DEFENDANT-APPELLANT: CHERYL P. VOLLWEILER (Meryl R. Lieberman, *on the brief*), Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, New York.

Appeal from the United States District Court for the Eastern District of New York (Spatt, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Preferred Contractors Insurance Company Risk Retention Group, LLC ("PCIC") appeals the district court's judgment, entered January 29, 2016, resolving the underlying insurance action in favor of plaintiff-appellee Certified Multi-Media Solutions, Ltd. ("Certified") and intervenor-plaintiff-appellee St. Paul Fire & Marine Insurance Company, Travelers ("Travelers") (together, "plaintiffs"). The parties dispute the scope of certain contractual provisions that purportedly limit the amount of insurance coverage provided by PCIC to $10,000. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

In 2008, non-party Getronics USA Inc. ("Getronics") hired Certified, an electrical contracting company, to provide electrical services at a shopping mall in the

Bronx, New York. Getronics was insured under a commercial general liability policy issued by Travelers.

On March 14, 2009, PCIC issued to Certified an insurance policy (the "Policy") consisting of (1) a commercial general liability policy containing a standard set of provisions and (2) a specific set of provisions known as the Manuscript Policy Provisions, which included Endorsement 23.

On March 19, 2009, non-party Anthony Balzano, an employee of Certified, was injured while performing electrical work at the shopping mall. In New York state court he sued the mall owner, the lessee of the premises, and the general contractor. The lessee filed a third-party complaint for, *inter alia*, breach of contract against Certified and sought indemnification and contribution. The general contractor filed a third-party complaint for breach of contract and negligence against Getronics which, in turn, filed a third-party complaint against Certified for breach of contract and negligence and sought indemnification. Certified sought coverage under the Policy for its defense and directed Travelers, which was defending Getronics in litigation, to seek indemnification from PCIC as well. PCIC informed Certified in January 2012 that, pursuant to Endorsement 23 in the Policy, it would provide only up to $10,000 of coverage, rather than the full coverage of $1 million, for the claims arising from Balzano's injuries.

Certified filed this diversity action against PCIC in September 2014 seeking a declaratory judgment that the Policy provides up to $1 million in coverage and that PCIC is required to defend and indemnify it in the state court litigation. Travelers intervened and sought a declaratory judgment requiring PCIC also to pay its defense and indemnity costs in the state court litigation. In December 2015, the district court awarded summary judgment in favor of Certified, holding that, based on the unambiguous and plain meaning of the Policy, the $10,000 cap on insurance coverage in Endorsement 23 does not apply to the claims arising from Balzano's injuries. The court entered judgments for Certified and Travelers shortly thereafter.

We review an award of summary judgment *de novo* and will affirm only if the record, viewed in the light most favorable to the party against whom judgment was entered, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008).

In New York, "insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012). "[T]he initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (internal quotation marks omitted). "Language

- 4 -

whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Olin*, 704 F.3d at 99 (quoting *Hunt Ltd. v. Lifshultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).  The court is to give the words and phrases in a contract their plain meaning, construe the contract to give full meaning and effect to all its provisions, and avoid contract interpretations that render a clause superfluous or meaningless.  *Id.*

If the disputed language in the contract is ambiguous in that it is objectively and reasonably capable of more than one meaning in the context of the entire agreement, the court may use extrinsic evidence to discern the parties' intent at contract formation and interpret the disputed language accordingly.  *Id.*  If the court still cannot ascertain the parties' intent, it may then apply other rules of contract interpretation such as the New York rule resolving contractual ambiguity in favor of the insured.  *Id.*

In this case, the disputed language is contained in the coverage-limiting provisions in Endorsement 23, which is entitled "Action Over":

> Notwithstanding the limit of coverage shown in the Declarations and/or Section III . . . , $10,000 only is the most *we*[4] will pay as damages for any and all claims, including any claim for contractual indemnification, arising from or related to any "bodily injury", "property damage" or "personal injury" sustained by an employee of an insured while injured, harmed or damaged in the scope of such employment.
>
> In any action brought by such employee, if *you*[5] are impleaded into said action, or if any third party action over is commenced against *you*,

irrespective of the claims or theories set forth therein, the $10,000 limit of coverage as provided in this endorsement shall apply when:

> 1.     The injury sustained by the employee is a "grave injury" as defined by Section 11 of the New York State Workers' Compensation Law, as follows: [list of qualifying injuries]; **and**
>
> 2.     *You* are required by contract, regulation or law to be insured under a workers' compensation policy providing liability coverage for claims arising from injuries to employees.
>
> ------------------------------------------------
> [4]     The words "we" and "our" refer to the company providing this insurance.
> [5]     The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

J. App. at 97-98.  Footnote 5 defines "you" to mean the "Named Insured shown in the Declarations," and "Named Insured" is defined in the Manuscript Policy Provisions as "the Member identified on the Declarations of the Policy."  J. App. at 31, 97.  The "Common Policy Declarations" page identifies the "Member" as Certified.  J. App. at 23.

Although the parties agree that the second paragraph in Endorsement 23 does not apply in this action because Balzano did not suffer a "grave injury," they dispute whether the first paragraph, read in tandem with the second, imposes a $10,000 cap on damages for claims arising from Balzano's bodily injuries.  The crux of the parties' dispute is whether the phrase "an insured" in the first paragraph extends to the "Named Insured," which in this case is Certified.  PCIC contends that "an insured" includes the "Named Insured," and that therefore the $10,000 cap applies as Balzano was an employee of Certified.  Plaintiffs counter that the phrase "an insured" cannot be

read to include the "Named Insured" because such a construction would render the second paragraph superfluous.

The district court agreed with plaintiffs, concluding that (1) the plain meaning of the language in the Policy was clear, (2) the Policy used the phrases "an insured" and the "Named Insured" to refer to different sets of entities, (3) the first paragraph in Endorsement 23 applied the $10,000 cap to claims involving an employee of "an insured," and (4) the second paragraph applied the $10,000 cap to claims involving the "Named Insured." *See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("When the provisions [in an insurance contract] are unambiguous and understandable, courts are to enforce them as written.").

The district court's reading makes sense. The first paragraph of Endorsement 23 covers claims arising from injuries or property damage sustained "by an employee of an insured," while the second paragraph applies "if *you*[5] are impleaded into said action" or "if any third party action over is commenced against *you*." J. App. at 97. As noted, "you" refers to the "Named Insured shown in the Declarations," which is Certified. *Id.* The use of "you" indicates that the second paragraph applies specifically to Certified, while the first paragraph applies generically to any insured. *See Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) (describing, as a rule of contract interpretation, that specific language in a contract should be "given greater weight" than general language). In addition, throughout the Policy there are references to the

"Named Insured," "Insured," and "Named Insured and/or Insured," suggesting that the two are distinct and not the same entities.

On the other hand, PCIC maintains that the definitional provisions in Section II of the Policy suggest that where, as here, the Named Insured is a company or organization, the "Named Insured" is included within the definition of "an insured." Section II, entitled "Who Is An Insured," provides that:

1. If you are designated in the Declarations as:
   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

J. App. at 43. The next subsection in Section II identifies other individuals -- such as "volunteer workers" -- covered by "an insured." PCIC focuses on the statements in subsection 1 of Section II providing that "you are an insured" if "you" are, for example, a partnership, limited liability company, etc. As the Policy elsewhere explains, "[t]he

word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured." J. App. at 34. Because Certified is an organization designated in the Declarations, this could suggest that it is both the "Named Insured" *and* "an insured" under the Policy's definitions.

Certified responds that the Manuscript Policy Provisions expressly provide that their provisions and endorsements control, govern, and supersede any conflicting or varying provisions in the commercial general liability policy. We agree that this conflict provision makes clear that any inconsistencies between how the phrase "an insured" is defined or used in Section II and how it is defined or used in Endorsement 23 are to be resolved by looking to the latter. Accordingly, while we find Certified's reading more plausible, we need not reconcile the inconsistent usages of "an insured" and the "Named Insured," as, by the plain language of the Policy, the Manuscript Policy Provisions control.

As the district court concluded, PCIC's reading of the Policy would render the second paragraph superfluous. If "an insured" in the first paragraph included the Named Insured, there would be no need for the second paragraph. And PCIC's reading would create a contradiction, as the first paragraph would impose a $10,000 cap with respect to Certified generally, while the second paragraph would impose a $10,000 cap with respect to Certified only when there was a "grave injury." Plaintiffs' reading of the Policy avoids this contradiction and gives ready effect to both paragraphs in

Endorsement 23. *See Olin*, 704 F.3d at 99 ("Any interpretation of a contract that 'has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005))).

Accordingly, because Balzano was an employee of Certified and did not suffer grave injuries, the $10,000 cap did not apply to claims arising from his injuries and plaintiffs are entitled to up to $1 million in coverage under the Policy.

We have considered all of PCIC's other arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk